UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
K. DOE,

                Plaintiff,

- against -

STATE OF NEW YORK *et al.*,

                Defendants.
------------------------------------------------------------- x

**MEMORANDUM & ORDER**

10 CV 1792 (RJD) (PK)

DEARIE, District Judge:

Plaintiff K. Doe ("plaintiff"), a former inmate at various New York State correctional facilities, brings this § 1983 action for medical indifference in violation of the Eighth Amendment. Plaintiff's claims arise from the alleged creation and implementation—by high-ranking members of the New York State government—of a policy to withhold from state prisoners their positive Hepatitis status and deny treatment as a cost-saving measure. The case has been whittled down over time, and at this point, defendant George Pataki ("Governor Pataki"), the former Governor of the State of New York from January 1, 1995, to December 31, 2006, is the sole remaining defendant. Governor Pataki now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow, the Court grants the motion.

## BACKGROUND

1.     Plaintiff's Hepatitis Infection

On or about June 6, 1976, plaintiff was sentenced to thirty years' imprisonment in New York State correctional facilities. Third Am. Compl. ¶ 32, ECF No. 63. According to plaintiff, he "was not infected with Hepatitis B Virus (hereinafter 'HBV') or Hepatitis C Virus (hereinafter

'HCV') at the time of the pre-incarceration examination ordered by" the New York State Department of Correctional Services ("DOCS").[1] Id. ¶ 33.

During plaintiff's incarceration, he was given routine medical examinations at numerous correctional facilities. Id. ¶¶ 35-36. Although initially these examinations indicated that plaintiff was negative for HBV and HCV, plaintiff alleges that by 1998, his test results showed telltale symptoms of a Hepatitis infection, such that his doctors either knew or should have known of his likelihood of infection. Id. ¶¶ 37-51. Plaintiff alleges that defendants never informed him of this or treated him for his Hepatitis infection. Id. ¶ 73.

Because plaintiff was allegedly kept in the dark as to his condition, he did not discover his illness until April 23, 2008, almost one year after his release from prison on June 21, 2007, when plaintiff's private physician revealed that plaintiff suffered from HBV and HCV infections. Id. ¶¶ 73-74. Plaintiff alleges that by that point, the advanced stage of his infections caused him to suffer failing health. Id. ¶¶ 76, 106.

2. Defendants' Alleged Hepatitis Policy

Plaintiff alleges that certain of the defendants, including Governor Pataki, were aware of the "alarming rates [of] HAV, HBV and HCV infection in the prison population" and "discussed methods to keep prison HCV rates under control." Id. ¶¶ 6, 78. Plaintiff alleges that as a result of these discussions, the defendants, "in or about 1994, affirmatively decided to ignore staggering [Hepatitis] infection rates to save money because of the enormous costs of treating these inmates." Id. ¶ 83. The defendants subsequently initiated and enforced, or allowed to

---

[1] Effective April 1, 2011, the DOCS and the New York State Division of Parole merged to form the New York State Department of Corrections and Community Supervision ("DOCCS"). See Def.'s Mem. Law Supp. Mot. Summ. J. ("Def.'s Mem.") at 1 n.1, ECF No. 132.

2

continue, a policy that "allowed infected prisoners to remain anonymous with their infections undisclosed and hidden, treating only those who discovered their affliction through obvious symptoms, or those who discovered their ailments as a result of their affirmative request to be tested." Id. ¶ 89. The defendants are alleged to have continued this policy until 2005, when the Second Circuit held that constitutional claims for medical mistreatment could arise from a separate, publicly known New York State correctional facility Hepatitis guideline that denied HCV treatment to prisoners up for parole within the next twelve months. Id. ¶ 83; see also McKenna v. Wright, 386 F.3d 432, 437-38 (2d Cir. 2004).

3. Defendants' Motions to Dismiss for Failure to State a Claim

This action was originally brought on behalf of plaintiff and R. Doe, a woman who was infected with Hepatitis by plaintiff through consensual sex after his release from prison. Compl. ¶ 19, ECF No. 1. Plaintiff and R. Doe filed the original complaint (the "Original Complaint") on April 22, 2010, almost two years after plaintiff discovered his Hepatitis infection. ECF No. 1. The Original Complaint named four defendants: (1) the State of New York; (2) David Patterson, in his capacity as Governor of the State of New York; (3) the DOCS; and (4) Brian Fischer, in his capacity as Commissioner of the DOCS. Id. The first amended complaint (the "First Amended Complaint") was filed on October 15, 2010, and included numerous John Doe medical directors and treating physicians for the various correctional facilitates at which plaintiff was incarcerated. ECF No. 14. Then, on March 4, 2011, about a month and a half before the statute of limitations ran, plaintiff and R. Doe filed the second amended complaint (the "Second Amended Complaint"), removing all of the John Does and adding named parties. ECF No. 21.

On August 23, 2011, various defendants named in the Second Amended Complaint moved to dismiss the complaint on the grounds that, *inter alia*: (1) venue was improper; (2) the

Court lacked subject matter jurisdiction over plaintiffs' claims against the State of New York, the DOCS, and state officials in their official capacities; (3) plaintiffs had not alleged a plausible claim that there was such a Hepatitis policy; and (4) plaintiffs had not sufficiently pled the personal involvement of the defendants. ECF Nos. 37-38. In a Memorandum and Order dated September 27, 2012, this Court dismissed all of the defendants, with the exception of Governor Pataki. ECF No. 49. In so doing, this Court held that, *inter alia*: (1) plaintiffs had sufficiently alleged a plausible claim that the alleged Hepatitis policy existed; and (2) the claims against Governor Pataki could proceed based on his alleged role in creating the Hepatitis policy. Id.

After a few extensions, plaintiff filed a third amended complaint (the "Third Amended Complaint") on May 24, 2013, which, *inter alia*, added new defendants and no longer included R. Doe as a plaintiff. ECF No. 63. On November 27, 2013, defendants moved under Rule 12(b)(6) to dismiss the Third Amended Complaint in its entirety, arguing that: (1) plaintiff had not sufficiently alleged a plausible claim that there was such a Hepatitis policy; (2) plaintiff had not sufficiently pled the personal involvement of Governor Pataki and certain defendant doctors; and (3) plaintiff's claims against certain other defendants were barred by the statute of limitations. ECF Nos. 95-96. On March 13, 2015, this Court granted in part and denied in part defendants' motion. ECF No. 102. The Court found, as it had before, that plaintiff had sufficiently alleged (a) a plausible claim that there was such a Hepatitis policy and (b) the personal involvement of Governor Pataki. Id. The Court, however, dismissed plaintiff's claims against the other defendants, again making Governor Pataki the sole remaining defendant in the action. Id.

4.  Governor Pataki's Present Motion for Summary Judgment

Throughout this case, plaintiff's former counsel, Andre Soleil, repeatedly failed to comply with court directives in a timely fashion. As a result, Governor Pataki repeatedly moved to dismiss this action for lack of prosecution. ECF Nos. 83, 108, 114-15, 119. He most recently renewed his motion on February 16, 2016, requesting that the Court reschedule a hearing to show cause why the case should not be dismissed. ECF No. 119. In the alternative, Governor Pataki requested that the Court schedule a pre-motion conference regarding an anticipated motion for summary judgment.

On March 10, 2016, this Court denied Governor Pataki's motion to dismiss for lack of prosecution—given that Mr. Soleil had withdrawn from the case and Ernestine Mings had entered an appearance on behalf of plaintiff—and set a briefing schedule for Governor Pataki's motion for summary judgment. ECF No. 122. Governor Pataki served his motion on April 8, 2016, ECF No. 123, and the motion was fully briefed as of June 15, 2016. ECF Nos. 129-38. The Court heard oral argument on Governor Pataki's motion for summary judgment on July 8, 2016. ECF No. 139.

## DISCUSSION

Summary judgment is appropriate where "the evidence, viewed in the light most favorable to the party against whom it was entered, demonstrates that there are no genuine issues of material fact and that the judgment is warranted as a matter of law." Delaney v. Bank of Am. Corp., 766 F.3d 163, 167 (2d Cir. 2014) (quoting Global Network Commc'ns, Inc. v. City of New York, 562 F.3d 145, 150 (2d Cir. 2009)); see also Fed. R. Civ. P. 56(a). In deciding whether summary judgment is warranted, the Court must "resolve all ambiguities and draw all

reasonable inferences against the movant." Delaney, 766 F.3d at 167 (quoting Aulicino v. N.Y.C. Dep't of Homeless Servs., 580 F.3d 73, 79-80 (2d Cir. 2009)).

Governor Pataki moves for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, on the grounds that: (1) plaintiff cannot establish an Eighth Amendment claim for deliberate indifference to a serious medical need; (2) plaintiff cannot raise a genuine issue of material fact with respect to the existence of the alleged Hepatitis policy; and (3) the evidence demonstrates that Governor Pataki was not personally involved in the creation or continuation of any such policy.[2] Def.'s Mem. at 1-2, 6-13. For the reasons that follow, the Court finds that while plaintiff's claims against Governor Pataki may have barely survived the earlier motions to dismiss, Governor Pataki is now entitled to summary judgment in his favor.

I. Existence of Alleged Hepatitis Policy

Defendants twice moved to dismiss this action on the ground that plaintiff failed to sufficiently allege the plausibility of the alleged Hepatitis policy. Both times, this Court rejected defendants' arguments. Despite this, Governor Pataki now argues that he is entitled to summary judgment on this issue because plaintiff "offers nothing more than speculation that any such policy ever existed and, accordingly, cannot prevail on this claim." Id. at 8. The Court agrees.

Governor Pataki argues that plaintiff's contention is, in essence, simply that "because [plaintiff] learned that [the] DOCS had a[n official] policy in place whereby inmates with Hepatitis C were treated, the fact that he was not treated supports an inference that there was a [second, informal] policy not to disclose Hepatitis treatment." Id. at 8-9. Governor Pataki asserts that plaintiff's only basis for this assertion is that he once attended a meeting regarding

---

[2] In his reply brief, Governor Pataki also argues that the Court "should reject plaintiff's counter 56.1 statement as the citations do not support plaintiff's factual contentions." Def.'s Reply Mem. Law Further Supp. Mot. Summ. J. ("Def.'s Reply") at 2-5, ECF No. 134. Given the Court's ruling herein, the Court need not reach this issue.

Hepatitis C at Arthur Kill Correctional Facility, during which the cost of treatment was discussed and a DOCS representative allegedly stated that it was too expensive to treat everyone with Hepatitis and that the DOCS needed to find another way to address the problem. Id. at 9. Governor Pataki argues not only that the unidentified DOCS representative's statements are inadmissible hearsay, but also that plaintiff admits that neither the unidentified DOCS representative nor anyone else ever explicitly mentioned a policy not to disclose Hepatitis diagnoses or treat inmates with Hepatitis. Id. Therefore, Governor Pataki argues, plaintiff's claim regarding the alleged Hepatitis policy is "based on pure speculation." Id. at 9-10.

Plaintiff responds that "[b]ased on the litany of cases involving Hepatitis C treatment within [the] DOCS while defendant was governor of the State of New York," as well as the existence of "two heavily contested DOCS policies [regarding Hepatitis C treatment but distinct from the policy alleged in the present action] in place while plaintiff was incarcerated," "plaintiff's allegations of defendant's creation of [the Hepatitis policy alleged here] move well beyond speculation." Mem. Law Opp'n Def.'s Mot. Summ. J. ("Pl.'s Mem.") at 13-15, ECF No. 135. Plaintiff argues that a review of plaintiff's medical records reveals that the DOCS' *official* policy of treating inmates diagnosed with Hepatitis was not followed in plaintiff's case, and, plaintiff submits, "the reason why this policy was not followed was based on Governor Pataki's development of a secondary policy, or his continuation of a previous policy of refusing treatment to inmates that were infected with Hepatitis C while he was governor of the State of New York." Id. at 19. Plaintiff asserts that the "acts and omissions [of the DOCS physicians] support plaintiff's allegations that a secondary policy created by defendant existed whereby these physicians were directed not to inform certain inmates of their hepatitis infection." Id. at 18. Plaintiff argues that since Governor Pataki denies creating or implementing such a policy, "there

7

exists a triable question of material fact, a question reduced to one of credibility . . . and best left for the jury to consider." Id. at 23-24.

Plaintiff further asserts that while he may not be able to point to a written document establishing that the alleged Hepatitis policy existed, his inability to do so is "based on defendant's failure to produce any such information or appear for deposition to be questioned on this issue." Id. at 24.[3] Plaintiff also argues that "defendant has [similarly] failed to proffer any evidence that said policy does *not* exist." Id. (emphasis added).

The Court finds that plaintiff has indeed failed to raise a genuine issue of material fact with respect to whether the alleged Hepatitis policy existed. Whether or not the Court was correct in assessing the viability of plaintiff's complaints, plaintiff has yet to offer any concrete evidence that the policy actually existed. Plaintiff simply argues that the jury might infer the existence of such a policy from the fact that plaintiff was not informed of or treated for his Hepatitis infection, allegedly in violation of the DOCS's official policy, and from the fact that there have been numerous lawsuits filed over the years involving Hepatitis C treatment within the DOCS.

Plaintiff's curious formula suffers from one fatal flaw: there is simply no evidence to support it. Construing the limited available evidence in every way favorable to plaintiff, there is no evidence to close the gap between allegation and proof, and no genuine issue of material fact is presented for trial.

---

[3] Governor Pataki contests this point, representing that he responded timely to all of plaintiff's discovery requests and that plaintiff never noticed Governor Pataki's deposition. See Def.'s Reply at 7.

8

II. Governor Pataki's Personal Involvement

Defendants have also twice moved to dismiss the complaint on the ground plaintiff failed to sufficiently plead the personal involvement of Governor Pataki, and both times this Court rejected defendants' arguments, although not without considerable hesitation and doubt. Despite this Court's earlier rulings, Governor Pataki argues, as above, that he is now entitled to summary judgment on this issue. Again, the Court agrees.

"[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." Victory v. Pataki, 814 F.3d 47, 67 (2d Cir. 2016) (alteration in original) (quoting Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996)). "Rather, the 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Id. (quoting Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006)). "'Because vicarious liability is inapplicable to . . . § 1983 suits,' [plaintiff] must raise a genuine dispute as to whether 'each Government-official defendant, through the official's *own individual actions*, has violated the Constitution.'" Id. (first alteration in original) (emphasis in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009)). Absent direct participation in the alleged constitutional violation, a defendant in a supervisory position may still be held responsible if the official "creat[ed] a policy or custom that sanctioned conduct amounting to a constitutional violation, or allow[ed] such a policy or custom to continue." Hernandez v. Keane, 341 F.3d 137, 145 (2d Cir. 2003); see also Mem. & Order at 8-10, Mar. 13, 2015, ECF No. 102. Governor Pataki argues that he is entitled to summary judgment because he has "unequivocally stated that he neither created nor continued the alleged policy," and "plaintiff has not come forth with any evidence to the contrary." Def.'s Reply at 9.

Plaintiff admits that he has no personal knowledge of whether Governor Pataki created or was aware of the alleged Hepatitis policy. See Def.'s Mem. at 11-13 (providing excerpts from plaintiff's deposition). Plaintiff argues, however, that Governor Pataki has never submitted any documentation or testimonial evidence supporting his assertion that he did *not* create the policy. Pl.'s Mem. at 21. Plaintiff argues that Governor Pataki's "categorical denial [of his involvement in the alleged Hepatitis policy] creates at minimum, a triable issue of fact that should be submitted to the jury." Id.

Plaintiff further argues that the complaint alleges that Governor Pataki "held meetings to discuss 'methods to keep prison HCV rates under control'" and "'discussed the price of mass treatment and preventative measures in the prison system' in 'various meetings and memoranda between 1993 and 1995.'" Id. (quoting Third Am. Compl. ¶¶ 78-79, ECF No. 63). Plaintiff notes that according to the affidavit of Mr. Soleil, at one of the aforementioned meetings, Mr. Soleil informed Governor Pataki about the high rate of HCV among the adult prison population. Id. at 22. Thus, plaintiff argues, it is "certainly plausible" that Governor Pataki, after being advised of the number of inmates either infected with HCV or likely to become infected, decided to create the alleged Hepatitis policy or allowed it to continue. Id.

As this Court has previously observed in addressing the adequacy of plaintiff's pleadings—not in assessing the truth of plaintiff's allegations—it is perhaps *plausible* that Governor Pataki was involved in the alleged Hepatitis policy in one way or another. That, however, is not enough to defeat Governor Pataki's present motion for summary judgment. As Governor Pataki quite correctly states, "The fact that this Court held that plaintiff's theory was plausible at the motion to dismiss stage does not absolve plaintiff of his obligation to come forward with evidence of Governor Pataki's personal involvement at the summary judgment

stage." Def.'s Reply at 10. Plaintiff has simply failed to offer any concrete evidence supporting his claim that Governor Pataki was personally involved in the alleged Hepatitis policy, and Governor Pataki is entitled to summary judgment on this basis as well.

## CONCLUSION

For the foregoing reasons, the Court finds that plaintiff has failed to create triable issues of fact with respect to whether the alleged Hepatitis policy existed, and whether Governor Pataki was personally involved in the creation or continuation of such a policy. The Court, therefore, grants Governor Pataki's motion for summary judgment.

SO ORDERED.

Dated: Brooklyn, New York
November 17, 2016

s/ RJD

_____
RAYMOND J. DEARIE
United States District Judge